UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW ULSCHAK                                          CIVIL ACTION

VERSUS                                                  NO. 10-4494

MICHAEL J. ASTRUE, COMMISSIONER                         SECTION "N" (3)
SOCIAL SECURITY ADMINISTRATION

REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and supplemental security income benefits ("SSI") under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

I.   BACKGROUND

Plaintiff filed an application for DIB and SSI on December 5, 2008, alleging a disability onset date of October 1, 2008. (Adm. Rec. at 139, 141-42, 148-50). Plaintiff alleged disability due to gout, diabetes, cardiomyopathy, high blood pressure and "back [problems]." (*Id.* at 158). Plaintiff, born on April 11, 1977, was 31 years old on the date on which he alleged disability and 32 years old at the time of the final administrative decision. (*Id.* at 141, 154). Plaintiff has a high

school education and past work experience as a taxi driver, van driver, truck driver, fast food worker and fast food manager.  (*Id.* at 19, 23).

Defendant initially denied plaintiff's application on January 20, 2009.  Plaintiff sought an administrative hearing, which the agency held on October 15, 2009.  (*Id.* at 29-60).  Plaintiff and vocational expert Crystal Younger both testified at the hearing.

On February 2, 2010, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff did not meet the definition of disability through the date of the decision.  (*Id.* at 15-24).  In the decision, the ALJ concluded that plaintiff has the severe impairments of non-ischemic cardiomyopathy, gouty arthritis, prescription drug abuse, degenerative disc disease of the lumbar spine, diabetes mellitus and obesity.  (*Id.* at 17).  The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.* at 18).  The ALJ found that plaintiff retained the ability to perform a full range of sedentary work that requires no lifting or carrying more than ten pounds occasionally and no more than two hours standing or walking in an eight-hour workday.  (*Id.*).  She concluded that plaintiff could not perform his past work, but that, after consideration of plaintiff's age, education and work experience and in conjunction with the Medical-Vocational Guidelines, his residual functional capacity ("RFC") would not preclude performing work that exists in significant numbers in the national economy.  (*Id.* at 23-24).  The ALJ thus denied plaintiff's application for DIB and SSI.  (*Id.* at 24).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not disabled. (*Id.* at 10).  The Appeals Council denied plaintiff's request.  (*Id.* at 1-5). Plaintiff then timely filed

this civil action.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the

Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.  ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians;

(3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

IV.    **ISSUES ON APPEAL**

There are two issues on appeal:

(1)    Whether the ALJ erred when she determined that plaintiff did not suffer from a severe mental impairment.

(2)    Whether the ALJ erred when she concluded that plaintiff could perform the full range of sedentary work (*i.e.*, whether substantial evidence supports the ALJ's RFC determination).

V.    **ANALYSIS**

    1.    **Whether the ALJ erred when she determined that plaintiff did not suffer from a severe mental impairment.**

Plaintiff contends that substantial evidence does not support the ALJ's conclusion that his anxiety and depression are not severe mental impairments. As noted above, the ALJ determined plaintiff's severe impairments to be non-ischemic cardiomyopathy, gouty arthritis, prescription drug abuse, degenerative disc disease of the lumbar spine, diabetes mellitus and obesity. (Adm. Rec. at 17). With regard to plaintiff's anxiety and depression, the ALJ concluded:

> The claimant has alleged disability due to anxiety and the records reflect that he has been prescribed antianxiety medication. However, the medical evidence of record does not show that the claimant has ever been diagnosed with a mental impairment by a psychiatrist or psychologist, and there are no signs, symptoms, or other medically demonstrable phenomena that indicate a severe psychological abnormality. Therefore, there is insufficient evidence to establish anxiety as a medically determinable mental impairment.

(*Id.* at 18) (citations omitted). As the ALJ correctly cited, "[a]n impairment or combination of

impairments is deemed 'non-severe' when it is no more than a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (*Id.*) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Having reviewed the administrative record, the Court finds that substantial evidence supports the ALJ's conclusion that plaintiff's anxiety and depression are not severe mental impairments. As the Commissioner correctly points out, the record reveals numerous instances when various physicians noted plaintiff's normal psychological status. On November 2, 2008, Dr. Marie. L. Maloney noted that plaintiff stated that he had a history of depression, but Maloney failed to include either depression or anxiety in her final diagnosis. (*Id.* at 243). In a report dated November 14, 2008 from the Northshore Regional Medical Center, an unidentified physician noted that plaintiff's mood and affect were normal and reported that plaintiff was negative for depression. (*Id.* at 266-67). On January 16, 2009, Dr. Robert Mercadel at Slidell Memorial Hospital again noted that plaintiff's affect and mood were normal. (*Id.* at 500). And again on February 25, 2009, plaintiff reported no psychological history, and Dr. Edward Lirette noted normal mood and affect. (*Id.* at 477, 479).

In addition, on his "Disability Report – Appeal," plaintiff admitted that he had not seen a "doctor/hospital/clinic or anyone else for emotional or mental problems that limit[ed his] ability to work." (*Id.* at 176). Moreover, at the oral hearing before the ALJ on October 15, 2009, counsel for plaintiff did not indicate nor argue that plaintiff suffered from a severe mental impairment. (*Id.* at 32-33). And while plaintiff tersely testified that he became anxious after he took Prednisone for his gout, plaintiff's "isolated comments . . . are insufficient, without further support, to raise a suspicion

7

of non-exertional impairment." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Pierre v. Sullivan*, 884 F.2d 799, 802-03 (5th Cir. 1989)).

Notwithstanding this evidence, plaintiff contends that he cited the ALJ to substantial evidence in the record to support the finding that his depression and anxiety are severe mental impairments. In his disability report, for example, plaintiff listed Klonopin as a prescription medication that he took for his anxiety. (*Id.* at 163). On his "Disability Report – Appeal," completed on March 5, 2009, plaintiff listed anxiety and depression as new illnesses since he had last completed a disability report. (*Id.* at 175). Even defendant notes that Dr. Emilio Russo noted plaintiff's self-reports of anxiety and "feeling depressed." (*Id.* at 453-56). Russo diagnosed only "pscyhosis/depression, not otherwise specified." (Adm. Rec. at 455).

Plaintiff also notes that in a consultation report date November 8, 2007, Dr. Camille N. Bitar listed anxiety and depression. (*Id.* at 296). However, Bitar made no recommendation for treatment for the alleged anxiety and depression. (*Id.*). Plaintiff also points to records from Slidell Memorial Hospital ("SMH") dated November 2 and 7, 2008 that reveal that plaintiff *presented* with a history of depression and listed Cymbalta as one of plaintiff's medications. (*Id.* at 244, 248). Plaintiff also points to SMH records dated June 22, 2009 which reveal that plaintiff presented with a past medical history of anxiety and took Ativan for it. (*Id.* at 462-63). Further, plaintiff notes that Dr. Michael Casey's Physical Residual Functional Capacity Questionnaire dated April 5, 2009 listed anxiety as a psychological condition that affects plaintiff's physical condition. (*Id.* at 323).

It is not the province of this Court to re-weigh the evidence before the ALJ but only to determine whether substantial evidence supports the ALJ's conclusion. *Carey*, 230 F.3d at 135.

Here, there is substantial evidence to support the ALJ's finding that plaintiff does not suffer from a severe mental impairment. While plaintiff correctly notes that there is also evidence in the record to show that he suffered from anxiety and/or depression, this Court will not reverse the ALJ's conclusion unless it can not find substantial evidence to support it. That is not the case here.

Plaintiff relies on *Scroggins v. Astrue*, 598 F. Supp. 2d 800 (N.D. Tex. 2009), to support his argument that he cited the ALJ to evidence sufficient to demonstrate that he has a severe mental impairment. But the Court finds *Scroggins* inapposite. There, the court reversed and remanded because the ALJ had categorically stated that *no* medical evidence of a severe mental impairment existed in the record. *Id.* at 806. Contrary to the ALJ's conclusion there, the district court found ample evidence in the record to support the plaintiff's argument and held that the ALJ had simply disregarded the evidence. *Id.* Here, however, the ALJ specifically noted that plaintiff has been prescribed anti-anxiety medication and that the evidence of record was simply *insufficient* to carry plaintiff's burden to demonstrate a severe mental impairment. (Adm. Rec. at 18). The ALJ here did not disregard completely the evidence of plaintiff's anxiety and depression, and, thus, *Scroggins* does not help plaintiff.

Plaintiff also complains that defendant failed to evaluate his alleged depression and anxiety under the "special technique" outlined in 20 C.F.R. § 404.1520a. However, the regulation clearly explains that the ALJ must evaluate plaintiff's mental impairment under the "special technique" only if the ALJ determines that plaintiff has a medically determinable mental impairment. *Id.* § 404.1520a(b). Here, the ALJ concluded that there was insufficient evidence to determine that plaintiff had a medically determinable mental impairment. Section 404.1520a is thus inapplicable.

9

Lastly, plaintiff contends that the ALJ erred when she failed to order a consultative psychological evaluation. The Court easily rejects this argument. To succeed on a claim that the ALJ failed to further develop the record by ordering a consultative evaluation, plaintiff must demonstrate that he was prejudiced by showing that he "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728. Plaintiff has simply made no such showing here. Accordingly, this claim fails.

> 2. **Whether the ALJ erred when she concluded that plaintiff could perform the full range of sedentary work (*i.e.*, whether substantial evidence supports the ALJ's RFC determination).**

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination and her conclusion that plaintiff can perform the full range of sedentary work. As the regulations define it, sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a). The ALJ retains the sole responsibility for determining an individual's RFC based on all of the relevant evidence, including the medical records, treating physician observations and the individual's description of his limitations. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1546(c); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The task of weighing the evidence is the province of the ALJ. *See Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

Ultimately, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work, generally defined in 20 CFR 404.1567(a) and 416.967(a) as work requiring lifting/carrying no more than 10 pounds occasionally, and no more than 2 hours standing/walking in an 8 hour workday.

(Adm. Rec. at 18). The ALJ also concluded:

> Thus, the undersigned finds the claimant credible to the extent he may experience pain or discomfort with heavy lifting or prolonged periods of walking and/or standing. *The residual functional capacity was, accordingly, reduced to accommodate those limitations.* However, the undersigned cannot find the claimant's allegations that he is incapable of all work activity to be credible based on the record as a whole.

(*Id.* at 22) (emphasis added).

While plaintiff points to numerous instances in the record to support his argument that the ALJ erred when she determined his RFC assessment, the Court finds that substantial evidence supports the ALJ's conclusion that plaintiff can perform the full range of sedentary work. The ALJ meticulously outlined the facts to support his conclusion. (Adm. Rec. at 19-23). Relying mainly on records from visits to the emergency room because plaintiff did not seek care through a primary care physician (*id.* at 19), the ALJ noted that on October 1, 2008, plaintiff presented at SMH. (*Id.*). While significantly obese, plaintiff was ambulatory, and sensation was normal even though he had limited ability to abduct his left arm. (*Id.*). On October 16, 2008, plaintiff presented ambulatory at Bogalusa Medical Center but reported pain in his legs. (*Id.* at 20, 256).

On November 14, 2008, plaintiff presented ambulatory with steady gait at the Northshore Regional Medical Center with complaints of back, bilateral leg and foot pain. (*Id.* at 20, 260-61). The staff physician noted full range of plaintiff's extremities, that his back was non-tender and that

11

his mood and affect were normal. (*Id.* at 261, 267). Plaintiff also admitted that medication decreased and relieved his pain. (*Id.* at 261); *see also Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). In addition, on February 25, 2009, Dr. Edward Lirette at SMH noted that plaintiff was ambulatory and observed a full range of motion in plaintiff's extremities. (Adm. Rec. at 477, 479).[1] During two other emergency room visits, on April 23, 2009 and May 14, 2009, respectively, the physicians noted that plaintiff was in "no apparent distress," alert and oriented. (*Id.* at 428, 444).

As the Commissioner correctly notes, plaintiff's own admissions support the ALJ's RFC assessment. Plaintiff admitted at both the oral hearing as well as to his physicians that medication decreased and relieved his pain. (*Id.* at 47-48, 261). The ALJ also rejected plaintiff's claim of disabling gout, noting that the evidence reflected that plaintiff was advised to control his gout with proper diet and exercise, advice plaintiff failed to follow by his own admission. (*Id.* at 22). Plaintiff admitted that he did not follow the diets prescribed by numerous physicians because he lived with his family, an admission the ALJ found not credible. (*Id.*).

The ALJ also concluded that plaintiff's allegations of disabling degenerative disc disease of the lumbar spine lacked medical support. (*Id.*). She found that there was no evidence in the record

---

[1] Both the Commissioner and the ALJ mention an emergency-room visit on December 20, 2008. The Commissioner cites page 579 of the administrative record to refer to this visit. However, there is no page 579 in the administrative record (and neither are the citations by the ALJ of help to the Court). Indeed, the Commissioner filed into the record a 506-page administrative record. The Court takes the opportunity to note that this is not the first instance that the Commissioner has cited to a non-existent page of the administrative record.

12

of radiculopathy, and Dr. Joseph Epps, during his examination of plaintiff, found no evidence of sciatica, central spinous tenderness, or paravertebral spasm or motor weakness except at the ankles. (*Id.*). Dr. Epps determined that plaintiff's toe flexion and extension, hamstrings, quads, iliopsoas and hip abductors and adductors were normal strength; plaintiff's plantar reflexes were normal; and deep tendon reflexes were trace and normal. (*Id.*).

In addition, the ALJ determined that the medical records reflected that plaintiff can control his diabetes mellitus with medication. (*Id.*); *see also Johnson*, 864 F.2d at 348 ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). The ALJ also found that there is no evidence in the record of cardiopulmonary disease or "heart failure exacerbate." (Adm. Rec. at 22).

Plaintiff contends that the ALJ failed to give the appropriate weight to the Physical Residual Functional Capacity Questionnaire of Dr. Michael Casey. In Casey's opinion, plaintiff is unable to walk long distances and unable to sit for prolonged periods of time. (*Id.* at 322). Casey opined that plaintiff can sit for a total of about four hours out of an eight-hour workday and stand/walk for a total of less than two hours out of an eight-hour workday. (*Id.* at 324). Additionally, Casey stated that plaintiff would need to walk around every thirty minutes for five minutes during the eight-hour workday. (*Id.* at 324). Casey further opined that plaintiff would need to be able to shift positions at will from sitting, standing or walking. (*Id.* at 324).

Contrary to plaintiff's suggestion, the ALJ did not "summarily" decide to accord little weight to Casey's opinion but detailed her reasons for doing so. As the ALJ correctly noted, Casey's conclusions are on an issue – plaintiff's RFC – that is specifically reserved to the Commissioner.

(*Id.* at 23); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The ALJ also noted that Casey "had only recently begun treating" plaintiff and only saw plaintiff on a limited basis at the hospital. (*Id.* at 23). Indeed, the only evidence in the record that this Court has found of an evaluation by Casey is one performed on February 27, 2009. (*Id.* at 474); *see* 20 C.F.R. § 404.1527(d)(2) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). The ALJ further concluded that Casey's opinions are not those of a specialist. *See* 20 C.F.R. § 404.1527(d)(5). She found that his opinions were not supported by examinations, signs and findings in the objective medical evidence and appeared to be based largely on plaintiff's subjective statements. (Adm. Rec. at 23). Accordingly, she properly accorded little weight to the opinion of Casey.

Even were Casey plaintiff's treating physician – as plaintiff appears to suggest with no cite to the record – the Court finds that good cause exists for decreasing reliance on Casey's opinion in the RFC questionnaire because his opinions are brief and conclusory. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) ("Good cause for abandoning the treating physician rule includes "disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." (quotations omitted)). Indeed, Casey's opinions on the RFC questionnaire are no more than checks in a box with little explanation and no citation to objective medical evidence to support

14

them. The Court finds that the ALJ properly accorded little weight to the opinion of Casey.

Plaintiff has not demonstrated that the ALJ's RFC assessment of the medical evidence was inconsistent with the regulations or any other applicable law. The assessment appears to be reasonable, and the Court finds that it is supported by substantial evidence. Plaintiff's citations to the record notwithstanding, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002). Here, substantial evidence in the form of objective medical evidence supports the ALJ's RFC assessment.

Lastly, plaintiff contends that the ALJ improperly applied the Medical-Vocational Guidelines ("Grids") to determine that, based on plaintiff's age, education and work experience, he can participate in other substantial gainful work that exists in significant numbers in the national economy. Plaintiff argues that, while a vocational expert testified at the oral hearing, the ALJ failed to consider the vocational expert testimony as it related to plaintiff's ability to alternate between sitting and standing. Because the ALJ failed to include a sit/stand option in plaintiff's RFC assessment, plaintiff contends that she failed to meet her burden at step five of the sequential evaluation.

The Court rejects plaintiff's argument. The Fifth Circuit has held that "[w]hen the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Selders v. Sullivan* 914 F.2d 614, 618 (5th Cir. 1990).

15

Here, and as the Court has found, substantial evidence supports the ALJ's RFC assessment. The ALJ did not determine that plaintiff must alternate between sitting and standing. While Casey opined that plaintiff must alternate between sitting and standing, the Court has found that the ALJ appropriately accorded little weight to Casey's opinion. Because substantial evidence supports the ALJ's conclusion that plaintiff has the RFC for a full range of sedentary exertion, the ALJ properly relied on Grid Rule 201.28 to determine that plaintiff was not disabled.

*Scott v. Shalala*, 30 F.3d 33 (5th Cir. 1994), does not support plaintiff's argument here. There, the ALJ determined that plaintiff had the RFC to perform sedentary work with certain limitations, one of which was that he had to have the option to sit or stand, as needed. *Id.* at 34. The Fifth Circuit concluded that "[b]ecause Scott *must alternate* between sitting and standing as needed, Scott's exertional capabilities do not fit within the definition of sedentary work," and the ALJ thus erred in applying the Grids to the plaintiff. *Id.* at 34-35 (emphasis added). Here, however, the ALJ did not conclude that plaintiff must alternate between sitting and standing, but that plaintiff must not stand or walk for more than two hours in an eight-hour workday. (Adm. Rec. at 18). Indeed, the ALJ specifically noted – as the highlighted sentence of the boxed quotation demonstrates above – that she reduced plaintiff's RFC to accommodate plaintiff's limitations on standing and/or walking. (*Id.* at 18).[2] And the Court has found that substantial evidence supports such a conclusion. *Scott*

---

[2] The Court also notes that the ALJ explicitly rejected a more demanding RFC – finding plaintiff capable of performing light work – as recommended by the State Agency Physical Residual Functional Capacity Assessment. (*Id.* at 23). The ALJ gave the report no weight because a health care professional had not signed it and the medical evidence in the record demonstrated that plaintiff is more limited than determined by the State Agency. (*Id.*).

16

is therefore inapposite.

## VI. CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support (1) the ALJ's conclusion that he does not suffer from a severe mental impairment nor (2) the ALJ's RFC assessment. Accordingly,

**IT IS RECOMMENDED** that the plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 9th day of February, 2012.

*Daniel E. Knowles, III*
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**